1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

CLARENCE L. HEARNS, et al.,

12

Plaintiffs,

13

v.

14

ANDREW WHISNAND, et al.,

15

Defendants.

CASE NO. 1:20-cv-0313 JLT (PC)

**ORDER REQUIRING PLAINTIFFS TO SUBMIT A RESPONSE**

**(Doc. 1)**

**FOURTEEN-DAY DEADLINE**

16

17

18

19

20

21

22

23

24

25

Clarence L. Hearns and Curtis Boyd governmental employees and/or entities violated their constitutional rights.[1] (Doc. 1.) Generally, the Court is required to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

26

**I.      Pleading Standard**

27

A complaint must contain "a short and plain statement of the claim showing that the pleader

28

---

[1] The complaint is signed only by Clarence L. Hearns.

1

1    is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but

2    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

3    do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly,

4    550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I

5    v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

6    omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S.

7    at 678.

8         Prisoners may bring § 1983 claims against individuals acting "under color of state law."

9    See 42 U.S.C. § 1983, 28 U.S.C. § 1915(e) (2)(B)(ii). Under § 1983, plaintiff must demonstrate that

10   each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d

11   930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a

12   plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969

13   (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

14   liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342

15   (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short

16   of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

17   **II.    Plaintiffs' Allegations**

18        Plaintiffs Clarence L. Hearns and Curtis Boyd were state prisoners housed at California

19   Substance Abuse Treatment Facility ("CSATF") in Corcoran, California. They name the following

20   individuals as defendants: Andrew Whisnand, a Deputy Attorney General; J. Barba, the CSATF

21   Litigation Coordinator; S. Fleming, Correctional Counselor I; and John Doe, a CSATF inmate-to-

22   inmate mail coordinator. Plaintiffs seek damages and injunctive relief.

23        Plaintiffs' allegations may be fairly summarized as follows:

24        In an unrelated case filed in this court, Boyd v. Etchebehere, Case No. 13-cv-1966-LJO-

25   SAB (E.D. Cal.), Hearns assisted Boyd as a "paralegal," helping draft motions and related

26   documents. Andrew Whisnand, defense counsel in that case, is accused of having included a false

27   statement in a declaration.

28

Hearns alleges that Whisnand conspired with the CSATF Litigation Coordinator and with Correctional Counselor Fleming to interfere with the Plaintiffs' ability to communicate with one another via inmate-to-inmate mail. Hearns contends that he mailed a number of legal documents to Boyd for review and/or filing in the aforementioned case, and in turn Boyd mailed him several documents. Barba allegedly "agreed to help stop or delay delivery of any legal mail or process utilized by Plaintiffs including inmate-to-inmate correspondence [CDC 1074] approval system." As a result of Barba's alleged interference with the inmate-to-inmate mail, Plaintiffs "suffered lost work product and lost opportunity to present facts and legal authorities before Courts."

On or around August 3, 2018, John Doe processed Hearns's incoming mail, which included a court order in a state court case, Case No. 24-2017-80002586-CU-WM-GDS. The court's order directed Hearns's appearance on a court call scheduled for September 14, 2018. When Barba received the order, he provided a copy to Hearns, but he did not enter the call into the institution's tracking system.

On September 14, Hearns appeared at defendant Fleming's office to join the 11:00 a.m. court call. Fleming, however, stated that he was unaware of the court call and said he would contact Barba "to see what's going on." Hearns waited in his cell but then returned to Fleming's office at 10:50 a.m. Fleming had not yet received word from Barba about the court call. As a result, Fleming refused to let Hearns join the call, and Hearns's writ of mandate was dismissed for failure to respond appropriately to a court-ordered appearance.

After the failed court call, Hearns submitted an Inmate Parole Request Form 22, a letter of dissatisfaction to Warden Stu Sherman, and an inmate grievance. Hearns suggests nefarious intent and plotting on the part of Barba and Fleming (allegedly in coordination with defendant Andrew Whisnand) to prevent him from making the call, but he also alleges that Fleming was unaware of the court call and that Barba stated that he did not know what the procedures were for making a court call.

///

///

**III.     Discussion**

    **A.  Claims on Behalf of Other Inmates**

    As an initial matter, Mr. Hearns is informed that he cannot bring an action on behalf of a fellow inmate because he is proceeding pro se in this action. Pro se litigants have no authority to represent anyone other than themselves; therefore, they lack the representative capacity to file motions and other documents on behalf of prisoners. See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an attorney for others than himself,'") (quoting C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987)); see also Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) (non-attorney plaintiff may not attempt to pursue claim on behalf of others in a representative capacity). "Although a non-attorney may appear in propria person in his behalf, that privilege is personal to him." Id. (citations omitted).

    **B.  Joinder**

    "Rule 20(a) of the Federal Rules of Civil Procedure permits the joinder of plaintiffs in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact. If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) (internal citations omitted); see Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

    Actions brought by multiple prisoners in pro se present unique problems not presented by ordinary civil litigation. For example, transfer of one or more plaintiffs to different institutions or release on parole, as well as the challenges to communication among plaintiffs presented by confinement, may cause delay and confusion. Moreover, even if plaintiffs obtained authorization to communicate with each other, delays would be caused by the need for all filings to contain the original signatures of both plaintiffs, since plaintiffs are not permitted to sign documents on the

1  other's behalf. Local Rule 131(b) ("All pleadings and non-evidentiary documents shall be signed

2  … by the party involved if that party is appearing in propria persona."); <u>Johns v. County of San</u>

3  <u>Diego</u>, 114 F.3d 874, 877 (9th Cir. 1997) ("[A] non-lawyer 'has no authority to appear as an

4  attorney for others than himself.' " (quoting <u>C.E. Pope Equity Tr. v. United States</u>, 818 F.2d 696,

5  697 (9th Cir. 1987))).

6          In addition, the interplay of the filing fee provisions in the Prison Litigation Reform Act of

7  1995 ("PLRA") suggests that prisoners may not bring multi-plaintiff actions, but rather must each

8  proceed separately. To proceed with a civil action, each plaintiff must pay the $400 filing fee

9  required by 28 U.S.C. § 1914(a) or request leave to proceed in forma pauperis and submit the

10  affidavit and trust account statement required by 28 U.S.C. § 1915(a). The PLRA expressly requires

11  that a prisoner, where proceeding in forma pauperis, pay the full amount of the filing fee. 28 U.S.C.

12  § 1915(b)(1). This provision reflected Congress's intent to reduce the volume of frivolous prisoner

13  litigation in the federal courts. <u>Hubbard v. Haley</u>, 262 F.3d 1194, 1196-97 (11th Cir. 2001); <u>see</u>

14  <u>also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 627-28 (9th Cir. 2002). Thus, in order not to undermine the

15  PLRA's deterrent purpose, courts have agreed that prisoner-plaintiffs who proceed together in one

16  action must each pay the full filing fee. <u>Boriboune v. Berge</u>, 391 F.3d 852, 855-56 (7th Cir. 2004);

17  Hubbard, 262 F.3d at 1197-98. However, 28 U.S.C. § 1915(b)(3) provides that "in no event shall

18  the filing fee collected exceed the amount of fees permitted by statute for the commencement of a

19  civil action." If multiple prisoners were permitted to proceed with a joint action, and each paid the

20  full filing fee in accordance with § 1915(b)(1) and the apparent intent of Congress, the amount of

21  fees collected would exceed the amount permitted by statute for commencement of the action, in

22  violation of § 1915(b)(3). Therefore, to avoid the problems related to case-management and filing

23  fees, permissive joinder of Clarence Hearns and Curtis Boyd, as co-plaintiffs in this action is

24  denied. They may each, however, proceed with their own actions. <u>See</u> <u>DirecTV, Inc. v. Leto</u>, 467

25  F.3d 842, 846 (3d Cir. 2006) (claims that are severed rather than dismissed may continue in a

26  separate suit to avoid statute of limitations barrier that might arise in event of dismissal).

27          Severance, however, is complicated by the fact that Boyd has not appeared in this action;

28

he has neither signed the complaint nor submitted an application to proceed in forma pauperis. Because it is unclear if Boyd has indeed joined Hearns in this case, Boyd will be directed to indicate his intent within fourteen days. At that time, he must file the complaint, with his original signature on it and pay a filing fee or submit a request to proceed in forma pauperis. If he does this, his case will be severed from this one, and Clarence Hearns will proceed as the sole plaintiff in this case. If Plaintiff Boyd does not appear or indicates that he does not intend to join this action, the Court will issue findings and recommendations to dismiss him from this action entirely. Either way, the remainder of this screening order will address only those claims that are specific to Hearns.

**C. Judicial Immunity**

Hearns names Andrew Whisnand, a Deputy Attorney General, for his role as defense counsel in Boyd v. Etchebehere, Case No. 13-cv-1966-LJO-SAB (E.D. Cal.). When sued in official and individual capacities, the Ninth Circuit has held that an attorney general or deputy attorney general has absolute immunity, except they "are not immune from any actions that are wholly unrelated to or outside of their official duties." Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001); see also Fry v. Melaragno, 939 F.2d 832, 837 (9th Cir. 1991) (government lawyers absolutely immune for actions "intimately" or "closely" associated with judicial process). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or agency hearing, absolute immunity is necessary to assure that ... advocates ... can perform their respective functions without harassment or intimidation." Id. (citation omitted). Because the conduct complained of was related to official duties that this defendant performed, any claim against him is barred.

Hearns also lacks standing to bring this claim because he was not a litigant in Boyd v. Etchebehere, Case No. 13-cv-1966-LJO-SAB (E.D. Cal.), and therefore was not harmed by any alleged impropriety. Prescott v. County of El Dorado, 298 F.3d 844, 846 (9th Cir. 2002) (""In order to have standing, a plaintiff must establish an injury in fact, causation, and redressability.").

**D. Linkage**

Under § 1983, the plaintiff must demonstrate that each named defendant personally

6

participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). Liability may not be imposed on supervisory personnel under the theory of respondeat superior. Iqbal, 556 U.S. at 676-77. Supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101 (2012).

Hearns names John Doe as a defendant for his alleged role in the processing of his incoming mail on August 3, 2018. Beyond that fact, there are no additional details to suggest that this defendant violated Hearns's constitutional right. Accordingly, Hearns fails to state a claim against John Doe.

**E.  First Amendment Access to Court**

Prisoners have a constitutional right of access to the courts, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011). This right is limited to direct criminal appeals, habeas petitions, and Section 1983 civil rights actions. Lewis v. Casey, 518 U.S. 343, 354 (1996). The right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.... [I]t is this capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. Id. at 356-57.

The Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category consists of "forward-looking" claims, which allege that official action presently is frustrating the plaintiff's ability to prepare and file a suit at the present time. Id. at 413. The object of "forward-looking" claims is to "place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id. The second category consists of "backward-looking" claims, which allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no

1   matter what official action may be in the future." Id. at 413-14. These cases look "backward to a

2   time when specific litigation ended poorly, or could not have commenced, or could have

3   produced a remedy subsequently unobtainable." Id. at 414. As plaintiff claims that defendants'

4   actions caused him to miss a deadline with the California courts, this case is "backward-looking."

5         To state a claim for denial of access to the courts, a plaintiff must establish that he or she

6   suffered an "actual injury"—that is, "actual prejudice with respect to contemplated or existing

7   litigation, such as the inability to meet a filing deadline or to present a claim." Nev. Dep't of Corr.

8   v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348-49). "Actual injury

9   is a jurisdictional requirement that flows from the standing doctrine and cannot be waived."

10  Lewis, 518 U.S. at 348. Specifically, in a "backward-looking" access-to-courts claim, a plaintiff

11  must identify: (1) a "nonfrivolous," "arguable" underlying claim, pled "in accordance with

12  Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued"; (2) the

13  official acts that frustrated the litigation of that underlying claim; and (3) a "remedy available

14  under the access claim and presently unique to it" that is "not otherwise available in some suit

15  that may yet be brought." Harbury, 536 U.S. at 415, 417-18. However, even if delays in providing

16  legal materials or assistance result in actual injury, they are "not of constitutional significance" if

17  "they are the product of prison regulations reasonably related to legitimate penological interests."

18  Lewis, 518 U.S. at 362.

19        Insofar as Hearns asserts an access to court claim based on conduct by CSATF Litigation

20  Coordinator Barba related to the processing and/or mailing of inmate-to-inmate correspondence

21  with Boyd, he fails to allege actual injury insofar as it relates to delayed filings and missed deadlines

22  in Boyd v. Etchebehere, Case No. 13-cv-1966-LJO-SAB (E.D. Cal.). In fact, Hearns would be

23  unable to allege any injury because the underlying case was initiated by and on behalf of Plaintiff

24  Boyd, meaning that any claimed injury would be his to assert, not Hearns. Since this defect cannot

25  be cured, any claim based on these facts should be dismissed without leave to amend.

26        Hearns also fails to state an access to court claim based on the missed court call in the state

27  court case, which was presumably filed on behalf of himself. Though Hearns claims the state case

28

8

1  was dismissed for his failure to attend a court call, he has provided no information concerning that

2  case, including what his "nonfrivolous" underlying claim was and why his inability to attend a court

3  call that he, as a state inmate, clearly could not have initiated on his own would have resulted in

4  dismissal.

5      **F.  Conspiracy**

6          Lastly, Hearns contends that the defendants conspired to prevent him from receiving or

7  sending mail. To state a claim for conspiracy under section 1983, plaintiff must show the existence

8  of an agreement or a meeting of the minds to violate his constitutional rights, and an actual

9  deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010);

10  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). "Conspiracy" is not a stand-alone claim. A

11  conspiracy "does not enlarge the nature of the claims asserted by the plaintiff, as there must always

12  be an underlying constitutional violation. Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir.

13  2012) (citations omitted).

14          Hearns fails to state a cognizable claim for conspiracy. He fails to demonstrate that any

15  individual defendant conspired, how such defendant conspired, and how the conspiracy led to a

16  deprivation of his constitutional rights. See Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).

17  Accordingly, Hearns fails to state a claim for conspiracy.

18  **IV.  Conclusion**

19          Hearns fails to state a claim on which relief may be granted. The Court will grant him an

20  opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

21  If he does not wish to amend, he may instead file a notice of voluntary dismissal, and the action

22  then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff

23  may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards

24  v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego

25  amendment). If the last option is chosen, the undersigned will issue findings and recommendations

26  to dismiss the complaint without leave to amend, plaintiff will have an opportunity to object, and

27  the matter will be decided by a District Judge.

28

If Hearns opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, Hearns is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Accordingly, the Court **ORDERS**:

1.  Within **fourteen days** from the date of this order, **Boyd** is directed to submit notice of his intent to proceed in this action. If he wishes to proceed, he SHALL submit a copy of his lawsuit reflecting his original signature, and pay the filing fee or submit a request to proceed in forma pauperis;

2.  If Boyd fails to respond to this order, the Court will presume that he does not wish to proceed with this case and will recommend that he be dismissed from this action;

3.  The Clerk of Court is directed to serve a copy of the complaint and this screening order on Plaintiff Boyd at the following address:

    Curtis Boyd
    CDCR # G-63585

1   Valley State Prison
2   P.O. Box 96
    Chowchilla, CA 93610

3

4       4.  Within **thirty days** from the date of this order, **Hearns** must file either a first

5           amended complaint curing the deficiencies identified by the Court in this order, a

6           notice of voluntary dismissal, or a notice of election to stand on the complaint; and

7       5.  If Hearns fails to file a first amended complaint or notice of voluntary dismissal, the

8           Court will recommend the action be dismissed, with prejudice, for failure to obey a

9           court order and failure to state a claim.

10

11  IT IS SO ORDERED.

12      Dated:   **October 29, 2020**                    **/s/ Jennifer L. Thurston**
                                                UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28